RECORD NO. 22-1403

In The

# United States Court of Appeals

### For The Fourth Circuit

## METROPOLITAN DEVELOPMENT GROUP AT
## COOL SPRING, LLC, a Virginia limited liability company,

*Plaintiff – Appellant*,

**v.**

## COOL SPRING ROAD LLC, a Maryland limited liability
## company; LIBBY ADELPHI ROAD LLC, a Maryland limited
## liability company; LL COLLEGE PARK LLC, a Maryland limited
## liability company; REBECCA B. SWANSTON, a Maryland
## resident; CHARLES B. BOSWELL, a Maryland resident,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## AT GREENBELT

───────────

## BRIEF OF APPELLEES

───────────

Steven A. Allen
**PESSIN KATZ LAW, P.A.**
**901 Dulaney Valley Road, Suite 500**
**Towson, Mayland 21204**
**(410) 938-8800**

*Counsel for Appellees*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>22-1403</u>      Caption: <u>Metro Dev. Group at Cool Spring LLC v. Cool Spring Road, LLC</u> , et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Cool Spring Road, LLC</u>
(name of party/amicus)


_____

 who is _____<u>appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Steven A. Allen                          Date: _____7/14/22_____

Counsel for: Cool Spring Road, LLC

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-1403__       Caption: __Metro Dev. Group at Cool Spring LLC v. Cool Spring Road, LLC__ , et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Libby Adelphi Road, LLC__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                        ☐YES ☑NO
        If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Steven A. Allen           Date: 7/14/2022

Counsel for: Libby Adelphi Road, LLC

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __22-1403__        Caption: __Metro Dev. Group at Cool Spring LLC v. Cool Spring Road, LLC__ , et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

LL College Park, LLC
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☐NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Steven A. Allen                    Date: _____7/14/2022_____

Counsel for: LL College Park, LLC

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __22-1403__          Caption: __Metro Dev. Group at Cool Spring LLC v. Cool Spring Road, LLC__ , et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Charles B. Boswell_____
(name of party/amicus)


_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Steven A. Allen _____     Date: _____7/14/2022_____

Counsel for: Charles B. Boswell _____

- 2 -

[Print to PDF for Filing]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No.  22-1403          Caption:  Metro Dev. Group at Cool Spring LLC v. Cool Spring Road, LLC , et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Rebecca B. Swanston
(name of party/amicus)


_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)          ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Steven A. Allen                                    Date:          7/14/2022

Counsel for: Rebecca B. Swanston

Print to PDF for Filing

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................. 1

STATEMENT OF THE CASE ............................................................. 1

A.    The Property ....................................................................... 1

B.    The Relationship Between The Parcel Owners and Metropolitan .................. 2

C.    The Joint Venture Formation Agreement ........................................ 5

        1.  Metropolitan Was Required To "Obtain" The Land Use Approvals .... 8

        2.  Metropolitan Was Required To Obtain The Land Use Approvals
            Within The Entitlement Period ........................................ 10

        3.  Metropolitan Did Not Meet The Conditions To Close In
            The Joint Venture Formation Agreement ............................. 12

        4.  The Amended and Restated Operating Agreement of
            Cool Spring, LLC .................................................... 15

D.    The District Court's Memorandum Opinion ................................... 17

SUMMARY OF ARGUMENT .......................................................... 20

ARGUMENT ........................................................................ 25

A.    The Joint Venture Formation Agreement Clearly And
        Unambiguously Required That Metropolitan Actually Obtain The
        Land Use Approvals Necessary To Develop The Property In The
        Agreed Upon Manner Within The Entitlement Period, Which
        There Is No Dispute, Metropolitan Failed To Do ......................... 25

        1.  Maryland Law of Contract Interpretation ........................... 26

2.   The Joint Venture Formation Agreement Required That Metropolitan Obtain The Land Use Approvals, Not Merely Pursue Them ......................................................................28

B.   The Series Qualifier Canon Does Not Separate "Pursue" From "Obtain" In Article 3.3(a) ...............................................................33

C.   Obtaining The Land Use Approvals Was A Condition Precedent To Close ....................................................................................36

D.   The Land Use Approvals Had To Be Obtained Within The Entitlement Period ...................................................................40

E.   Metropolitan Did Not Satisfy The Conditions To Close ..............................45

F.   Metropolitan Is Not A Victim. It Is A Contracting Party Who Simply Failed To Perform The Condition Precedent and Satisfy The Conditions In The Contract ......................................................48

CONCLUSION .......................................................................................48

REQUEST FOR ORAL ARGUMENT ..................................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE AND FILING

## TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

*Aronson & Co. v. Fetridge*,
    181 Md. App. 650, 957 A.2d 125 (2008) ......................................................27

*B & P Enterprises v. Overland Equipment Co.*,
    133 Md. App. 583, 758 A.2d 1026 (2000) ...............................................27, 39

*Brethren Mut. Ins. Co. v. Buckley*,
    437 Md. 332, 86 A.3d 665 (2014) ..................................................................28

*Calomiris v. Woods*,
    353 Md. 425, 727 A.2d 358 (1999) ................................................................26

*Chevron U.S.A., Inc. v. Apex Oil Company, Inc.*,
    113 F.Supp.3d 807 (D. Md. 2015) .................................................................37

*Chirichella v. Erwin*,
    270 Md. 178, 310 A.2d 555 (1973) ......................................................37, 39, 40

*Credible Behavioral Health, Inc. v. Johnson*,
    466 Md. 380, 220 A.3d 303 (2019) ...........................................................27, 28

*Diamond Point Plaza Ltd. P'ship. v. Wells Fargo Bank, N.A.*,
    400 Md. 718, 929 A.2d 932 (2007) ................................................................26

*Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*,
    434 Md. 37, 73 A.3d 224 (2013) ...................................................................27

*Griffith v. Scheungrab*,
    219 Md. 27, 146 A.2d 864 (1958) .................................................................39

*Facebook, Inc. v. Duguid*,
    141 S. Ct. 1163 (2021) ..................................................................33, 34, 35, 36

*Gresham v. Lumbermen's Mut. Cas. Co.*,
    404 F.3d 253 (4th Cir. 2005) ...................................................................26, 28

*Howard v. Federal Crop Ins. Corp.*,
    540 F.2d 695 (4th Cir. 1976) ............................................................38

*Hubler Rentals, Inc. v. Roadway Exp., Inc.*,
    637 F.2d 257 (4th Cir. 1981) ............................................................38

*J.E. Dunn Const. Co. v. S.R.P. Development Ltd. Partnership*,
    115 F.Supp.3d 593 (D. Md. 2015) ....................................................38

*Owens-Illinois, Inc. v. Cook*,
    386 Md. 468, 872 A.2d 969 (2005) ...................................................27

*Parkway 1046, LLC v. U.S. Home Corporation*,
    961 F.3d 301 (4th Cir. 2020) ......................................................28, 30

*Post v. Bregman*,
    112 Md. App. 738, 686 A.2d 665 (1996) ...........................................27

*Ramlall v. MobilePro Corp.*,
    202 Md. App. 20, 30 A.3d 1003 (2011) .............................................27

*Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*,
    165 Md. App. 262, 885 A.2d 381 (2005) ...........................................37

*SVF Riva Annapolis LLC v. Gilroy*,
    459 Md. 632, 187 A.3d 686 (2018) ...................................................29

*Sy-Lene of Wash., Inc. v. Starwood Urban Retail, II, LLC*,
    376 Md. 157, 829 A.2d 540 (2003) .............................................26, 28

*Tomran, Inc. v. Passano*,
    391 Md. 1, 891 A.2d 336 (2006) .......................................................27

*Towson University v. Conte*,
    384 Md. 68, 862 A.2d 941 (2004) ...............................................28, 30

*Walker v. Department of Human Resources*,
    379 Md. 407, 842 A.2d 53 (2004) .....................................................27

**Rules:**

Federal Rule of Appellate Procedure 34(a) ..............................................49

Local Rule of the Fourth Circuit 34(a) ...................................................49

**Other Authorities:**

Restatement (Second) Contracts § 227 ..................................................38

*The American Heritage Dictionary of English Language* 1236 (4th ed. 2006) .......29

13 Williston on Contracts § 38:1 (4th ed.)..............................................40

Merriam-Webster.com, "Entitlement." (last visited 7/13/22) ................................40

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether in entering summary judgment in favor of the Appellees, the District Court correctly decided that the Joint Venture Formation Agreement clearly and unambiguously required that Metropolitan actually obtain the Land Use Approvals necessary to develop Appellees' Property in the agreed upon manner within the agreed time, designated by the Parties as the Entitlement Period, which there was no dispute that Metropolitan failed to do.

## STATEMENT OF THE CASE

### A.    THE PROPERTY

The Property which is the subject of this case is 17.3 acres of undeveloped land in Hyattsville, Maryland, adjacent to the University of Maryland College Park and a planned District of Columbia Metro Station on its Purple Line ("Property"). *JA 7, Plaintiff's Complaint ¶ 2.*  The Property has been owned for many years, twenty-five percent each, by LL College Park, LLC (Daniel Lederberg), Libby Adelphi Road, LLC (Howard Libby), Rebecca B. Swanson and Charles B. Boswell (collectively "Parcel Owners").  *JA 419, Lederberg Affidavit ¶¶ 2, 3.*  Since October 2017, title to the Property has been held by Cool Spring Road, LLC, an entity which is one hundred percent (100%) owned by the Parcel Owners ("Parcel Owners, LLC").  *JA 419, Lederberg Affidavit ¶ 3.*  The Property is the sole asset of Parcel Owners, LLC.  In its current undeveloped state, the Property is worth in excess of

1

One Million Four Hundred Thousand Dollars ($1,400,000). *JA 420, 422, Lederberg Affidavit ¶¶ 4, 13.*

## B.  THE RELATIONSHIP BETWEEN THE PARCEL OWNERS AND METROPOLITAN

Appellant, Metropolitan Development Group at Cool Spring, LLC ("Metropolitan"), is an affiliate of Metropolitan Development Group, LC ("MDG"), a real estate developer. *JA 7-8, Complaint ¶ 7.* MDG was originally a party to the Joint Venture Formation Agreement. On or about June 25, 2019, MDG's interest in the Joint Venture Formation Agreement was transferred and assigned by it to Metropolitan. *JA 7, Complaint ¶ 7.*

In 2016, Metropolitan approached the Parcel Owners about developing their Property for multi-family residential purposes. *JA 175, Metropolitan Answer to Counterclaim ¶ 3; JA 420, Lederberg Affidavit ¶ 5.* In order to develop the Property in that manner, however, Land Use Approvals, including zoning ("Land Use Approvals"), needed to be obtained from the local government. *JA 337, Horne Declaration ¶ 11.*

Metropolitan represented to the Parcel Owners that it specialized in developing difficult-to-entitle sites and had experience and expertise in doing so, including in the area where the Property was located. Metropolitan represented that it could obtain the necessary Land Use Approvals to develop the Property for multi-family residential

2

rental purposes and proposed to the Parcel Owners that they enter into a joint venture with Metropolitan to develop their Property. *JA 420, Lederberg Affidavit ¶ 5.*

The Parcel Owners accepted Metropolitan's proposal to form a Joint Venture to develop their Property as multiple market rate residential rental units, but only if Metropolitan could successfully obtain the Land Use Approvals which would be necessary to develop the Property in that manner, within an agreed period of time. The Parties designated that agreed period of time the "Entitlement Period." *JA 420, Lederberg Affidavit ¶ 6.* Metropolitan and the Parcel Owners agreed that if Metropolitan could meet the requirement of obtaining the Land Use Approvals within the Entitlement Period, Parcel Owners would form a Joint Venture with Metropolitan, admitting it and giving Metropolitan a 71% interest in Parcel Owners' LLC with managerial control. *JA 420, Lederberg Affidavit ¶ 7.*

From the inception of, and throughout the Parties' relationship, the Entitlement Period was a finite period of time to which the Parties agreed for Metropolitan to obtain the Land Use Approvals necessary to develop the Property for multi-unit residential rental units. *JA 420-21, Lederberg Affidavit ¶¶ 6, 7, 8.* It has always been a period of no longer than three years, two years, with up to two six-month extensions.

Metropolitan drafted the Letter of Intent, which was executed by the Parties on or about September 7, 2016. *JA 175-76, Metropolitan Answer to Counterclaim, ¶ 4;*

3

*JA 42, Lederberg Affidavit ¶ 9; JA 520, Brennan Affidavit ¶ 4.* The Letter of Intent stated: "[u]pon entering into a Definitive Agreement, MDG [Metropolitan's predecessor] will have a period of two (2) years (**the "Entitlement Period"**). . . ." to obtain the Land Use Approvals. *JA 167, 426 Letter of Intent, p. 2* (emphasis added). The Letter of Intent also provided that if Metropolitan was unable to obtain the Land Use Approvals within the two-year Entitlement Period, but was diligently attempting to do so, the Entitlement Period could be extended, by up to two six-month extensions. *JA 169, Letter of Intent, p. 4; JA 421, Lederberg Affidavit, ¶ 8.*

After the Parties signed the Letter of Intent, Metropolitan drafted and sent the Parcel Owners the proposed definitive Joint Venture Formation Agreement, which, after negotiations, was signed by the Parties in or about August 2017. *JA 175-76, Metropolitan Answer to Counterclaim, ¶¶ 14, 15; JA 22-90, Joint Venture Formation Agreement[1]; JA 421, Lederberg Affidavit, ¶ 9.* There was no dispute of fact before the District Court, that the Joint Venture Formation Agreement, which was initially prepared by Metropolitan, the various drafts that followed, and the final signed Joint Venture Formation Agreement all carried forward the "Entitlement Period" of

---

[1]    There are multiple copies of the Joint Venture Formation Agreement in the Joint Appendix. The Joint Appendix pages referred to throughout this Brief are the Joint Appendix pages associated with the copy of the Joint Venture Formation Agreement that was attached to Metropolitan's Complaint, as Exhibit 1. *JA 22 to 89.*

two years, with up to two six-month extensions within which Metropolitan had to obtain the necessary Land Use Approvals. *JA 175-76, Metropolitan Answer to Counterclaim ¶¶ 4; JA 520, Brennan Affidavit ¶¶ 5, 7; JA 421, Lederberg Affidavit ¶ 8.*

The District Court determined that the Joint Venture Formation Agreement "clearly and unambiguously" required Metropolitan to obtain the Land Use Approvals within the Entitlement Period, which, as Metropolitan admitted before the District Court, "it did not do." *JA 950-51, District Court Memorandum Opinion ("Memorandum Opinion") at pp. 18-19.*

### C.    THE JOINT VENTURE FORMATION AGREEMENT

The Recitals to the Joint Venture Formation Agreement stated that the purpose of the Joint Venture to be formed between the Parties was to "develop the Project" in the manner provided for in the Agreement. *JA 22.* Article 3.2(f) set forth the manner – no less than 120 market rate, multi-family rental units. *JA 25.* The Parties stated in the Recitals that **"[s]ubject to the satisfaction [by Metropolitan] of certain conditions precedent to Closing . . . ."** (Emphasis added.), *JA 22,* the Parcel Owners would cause "the issuance of a membership interest in Parcel Owners' LLC . . . [and]

5

admit Metropolitan as a member of Parcel Owners' LLC to develop the Property." *JA 22, Whereas Clauses C and D.*[2]

In order to develop the Property in the agreed manner, Land Use Approvals were necessary. *JA 22, Whereas Clause D; JA 337, Horne Declaration ¶ 11.* Land Use Approvals are defined in Article 3.2(d) as "all final, non-appealable approvals of Governmental Authorities required for Parcel Owners' LLC to possess development and zoning rights for the Project, including, without limitation, any site plan approval, rezoning, or similar approval required under applicable Legal Requirements." *JA 25, Article 3.2(d).*

The Parties executed the Joint Venture Formation Agreement in or about August 2017. *JA 39-43.*

Prior to the finalization and execution of the Joint Venture Formation Agreement, Metropolitan proposed that the Parcel Owners agree to immediately form the Joint Venture with Metropolitan, and immediately transfer their Property to the Joint Venture, after which Metropolitan would pursue the necessary Land Use Approvals. *JA 520, Brennan Affidavit ¶ 8.* The Parcel Owners refused this request

---

[2]     The Joint Venture Formation Agreement provided for a Study Period of sixty days for Metropolitan to decide whether it wished to pursue the Land Use Approvals. *JA 20-24, Article 1.1(g), 2.2.* The language in Whereas Clause C, "Metropolitan's decision to seek the Land Use Approvals," referred to Metropolitan's right at the conclusion of the Study Period to decide whether or not to pursue them.

because their deal with Metropolitan required it to first obtain the Land Use Approvals within the Entitlement Period before the Joint Venture, which would own the Property, would be formed and Metropolitan admitted into it with a 71% interest and managerial control. *JA 421-22, Lederberg Affidavit, ¶ 11; JA 520, Brennan Affidavit ¶ 8.*

Because the Joint Venture would not be immediately created, but instead the Joint Venture Formation Agreement was an agreement to form a Joint Venture if Metropolitan obtained the Land Use Approvals, *JA 420, Lederberg Affidavit ¶ 10,* Metropolitan's counsel requested that Metropolitan be given the right to record a Memorandum of Option in the land records to put a cloud on the title to the Property while Metropolitan obtained the Approvals. Metropolitan wanted to be protected from the Parcel Owners alienating the Property during the Entitlement Period. *JA 520, Brennan Affidavit ¶ 9.*

The Parcel Owners agreed to this request, but only on the condition that if Metropolitan placed a cloud on the title, that Metropolitan provide the Parcel Owners with an executed Release, which the Parcel Owners could file to clear the cloud if Metropolitan was unable to obtain the Land Use Approvals during the Entitlement Period. *JA 520-21, Brennan Affidavit ¶ 9; JA 421-22, Lederberg Affidavit, ¶ 11.*

Accordingly, the Parties included Article 2.3 in the Joint Venture Formation Agreement. Article 2.3 provided:

7

> Metropolitan may elect to record a memorandum of option in the land records against the Property memorializing its rights under this Agreement. If Metropolitan records such a memorandum . . . Metropolitan shall deliver an executed release of such option . . . **which release shall be recorded if Metropolitan fails to obtain the Approvals during the Entitlement Period.**

*JA 24.* (emphasis added).

### 1.    Metropolitan Was Required To "Obtain" The Land Use Approvals

Article 3.3(a) of the Joint Venture Formation Agreement required that Metropolitan actually "obtain" the Land Use Approvals. In language which the District Court determined was clear and unambiguous, *JA 951, p. 19,* Article 3.3(a) provided, in pertinent part:

> (a) The parties agree that, from and after the Effective Date, Metropolitan shall have the right to **pursue and obtain** the Land Use Approvals and shall use its commercially reasonable efforts to **pursue and obtain** the Land Use Approvals. . . .

*JA 25.* (Emphasis added).

At pages 6 and 7 of its Brief, Metropolitan erroneously attempts to separate the words "**pursue**" from "**obtain**" claiming that the presence of the words "use commercially reasonable efforts" in the second clause of Article 3.3(a) relieved Metropolitan of the requirement that it obtain the Land Use Approvals. Instead, Metropolitan asserts at page 6 of its Brief, all that it was required to do under Article 3.3(a) was "pursue" the Land Use Approvals "in exchange for [the] Parcel Owners'

agreement to grant Metropolitan a 71% interest in the joint venture." *Metropolitan Brief at p. 6.*

Metropolitan asserts that the words "use commercially reasonable efforts" in the second clause of Article 3.3(a) only "established the standard for Metropolitan's efforts ('commercially reasonable')," not that it had to obtain the Approvals. Metropolitan asserts that it met the standard by establishing "an agreed budget with respect to the effort . . . to pursue and obtain approvals" and "fund[ed] an appropriate level of effort." *Metropolitan Brief at p. 7.* For those reasons, Metropolitan claims Parcel Owners should be forced to form the Joint Venture by admitting Metropolitan to Parcel Owners' LLC with a 71% interest. Metropolitan asserts that it had no duty beyond "pursue." The District Court rejected Metropolitan's position. *JA 945-46, Memorandum Opinion p. 13-14.*

The District Court correctly rejected Metropolitan's claim that it was irrelevant that Metropolitan did not obtain the Land Use Approvals, and that Metropolitan is entitled to be rewarded because it made a commercially reasonable effort to pursue the Approvals. Of course, as Metropolitan knows, the Property could not be developed in the agreed upon manner merely because Metropolitan made a commercially reasonable effort to pursue, if that pursuit was unsuccessful. It was required to "pursue and obtain" the Land Use Approvals. The Approvals were not obtained. *JA 945, Memorandum Opinion at p.13.*

9

### 2.     Metropolitan Was Required To Obtain The Land Use Approvals Within The Entitlement Period

The two-year Entitlement Period, with two six-month extensions, is clearly stated in the Joint Venture Formation Agreement. *JA 25, Article 3.2(a); JA 27-27, Article 3.4.* Article 3.2(a), defines "Entitlement Period" as:

> "<u>Entitlement Period</u>" means the period commencing on the expiration of the Study Period and expiring on the two (2) year anniversary thereof, as the same may be extended pursuant to the express terms of this Agreement.

*JA 25.*

Article 3.4 provides for an extension of the Entitlement Period of up to one year, if Metropolitan was diligently pursuing but was unable to obtain the Land Use Approvals within the two-year Entitlement Period. Article 3.4 provides:

> <u>Extension of Entitlement Period.</u> **If Metropolitan is not successful in obtaining the Land Use Approvals during the Entitlement Period**, but Metropolitan has applied for and is diligently pursuing the Land Use Approvals, then Metropolitan shall have two (2) options to extend the Entitlement Period for periods of six (6) months each . . . .

*JA 26* (emphasis added).

The two six-month extensions to the Entitlement Period were provided so that Metropolitan could have an agreed period of extra time, if needed, to obtain the necessary Land Use Approvals.

10

Metropolitan made its first request for a six-month extension to the Entitlement Period in November 2019. Parcel Owners were reluctant to grant that request because, as Parcel Owners' letter of November 26, 2019, which was put into evidence by Metropolitan in connection with its Motion for Summary Judgment, shows, as of mid-November 2019, Metropolitan had not yet "applied for the Land Use Approvals, as required under" the Agreement. Nor had Metropolitan provided Parcel Owners with "evidence that you are in compliance with the Minimum Expenditure Levels required under Section 3.3." Nonetheless, as a gesture of good will, Parcel Owners agreed to Metropolitan's first six-month extension. *JA 327, Parcel Owners' Letter of November 26, 2019*.

After the first six-month extension of the Entitlement Period, Metropolitan, in January 2020, requested that the Joint Venture Formation Agreement be amended to extend the Entitlement Period by 18 months. *JA 374, 376-78, Metropolitan Representative Vazquez January 21, 2020, Letter with Proposed Second Amendment to Joint Venture Formation Agreement.* In the letter proposing the amendment to the Joint Venture Formation Agreement, Metropolitan stated that the Amendment will "provide additional time to allow us to try to make this happen." *JA 374.* Parcel Owners did not agree to the proposed Second Amendment to the Joint Venture Formation Agreement. *JA 422, Lederberg Affidavit ¶15.* Parcel Owners, however, gave Metropolitan the second six-month extension in May 2020 giving Metropolitan

11

three years to obtain the Land Use Approvals.  They were not willing to extend the

agreed time for the Approvals to be obtained.

In Metropolitan's May 15, 2020 letter, in connection with the second

extension under Article 3.4, Metropolitan's Representative wrote:

> Metropolitan and Parcel Owners' LLC confirm that the
> Entitlement Period shall expire on November 15, 2020, and that
> there are no further options to extend the Entitlement Period
> pursuant to Section 3.4 of the Agreement.

*JA 435, Vazquez May 15, 2020 Letter.*

In a letter dated October 21, 2020, Parcel Owners confirmed with

Metropolitan that notwithstanding the two extensions of the Entitlement Period,

Metropolitan had not been able to obtain the Land Use Approvals.  For that reason,

the Joint Venture Formation Agreement terminated at the end of the Entitlement

Period.  In the Parcel Owners' letter, however, and notwithstanding that they had no

obligation to do so, Parcel Owners, in good faith, offered to reimburse Metropolitan

for the legal fees it had incurred with outside counsel who assisted Metropolitan in

unsuccessfully trying to obtain the Land Use Approvals.  *JA 335, October 21, 2020*

*Letter; JA 26, Article 3.3(b)(i).*

### 3. Metropolitan Did Not Meet The Conditions To Close In The Joint Venture Formation Agreement

At pages 5 and 6 of its Brief, Metropolitan asserts that it was not required to

obtain the Land Use Approvals and that there were only four conditions it had to

meet in order to require Parcel Owners to close, to form the Joint Venture with Metropolitan and give it a 71% interest in Parcel Owners' LLC. Metropolitan asserts that the only conditions to close are specifically identified in Article 6.2 (a) to (d). Metropolitan asserts that obtaining the Land Use Approvals was not a condition to close. The District Court rejected this argument. *JA 948-49, Memorandum Opinion at pp. 16-17.*

In making this argument, Metropolitan ignores express language in the first paragraph of Article 6.2 of the Joint Venture Formation Agreement, which stated:

> 6.2 <u>Conditions to the Parties Obligation to close.</u> **In addition to all other conditions set forth herein,** the obligation of Parcel Owners' LLC to consummate the transaction contemplated hereunder shall be contingent upon the satisfaction of the conditions set forth in sub-paragraphs (a) through (d) of this Section 6.2 . . . .

*J.A. 30.* (emphasis added).

Metropolitan turns a blind eye to the words in Article 6.2, "[i]n addition to all other conditions set forth herein." Metropolitan ignores that obtaining the Land Use Approvals within the Entitlement Period, which was necessary to develop the Property in the agreed manner, was the primary "other condition[] set forth herein" referred to in Article 6.2.

13

Metropolitan also disregards that even if the words "[i]n addition to all other conditions set forth herein," are irrelevant, which they are not, it failed to meet all of the conditions to close. It failed to meet Article 6.2(b), which stated:

> (b) As of the Closing Date, the other party shall have performed its obligations hereunder and all deliveries to be made at Closing have been tendered.

*JA 30.* The District Court rejected Metropolitan's position, holding that obtaining the Land Use Approvals within the Entitlement Period was a condition precedent, a condition to close, which Metropolitan did not meet. *JA 950, District Court Opinion, at p. 18.*

The Land Use Approvals were indispensable to development of the Property for multi-unit residential rental purposes. *JA 337, Horne Declaration ¶ 11.* Metropolitan could not deliver the Land Use Approvals on the closing date because, as Metropolitan admitted, and the District Court found, the Land Use Approvals were not obtained. *JA 951, Memorandum Opinion, at p. 19.*

Although Metropolitan engaged Arthur Horne, Jr., a very experienced and highly skilled attorney to assist it in obtaining the Land Use Approvals, Mr. Horne, as he admitted in his Declaration, submitted by Metropolitan, could not obtain them, nor could he say that Metropolitan would ever be successful in the future in obtaining the Land Use Approvals necessary to develop the Property in the agreed manner. *JA 346-42, Horne Declaration, ¶¶ 14, 48.*

14

### 4. The Amended and Restated Operating Agreement of Cool Spring, LLC

Metropolitan attempts to bootstrap its arguments in this Appeal through repeated references in its Brief to the unexecuted Amended and Restated Operating Agreement of Cool Spring, LLC, Parcel Owners' LLC, in which Metropolitan never became a member.[3]  Metropolitan's reliance is notwithstanding that there was no dispute below that the Operating Agreement was never finalized and never executed. Moreover, as Whereas Clause C to the Joint Venture Formation Agreement stated, the unexecuted Amended and Restated Operating Agreement, which was an Exhibit to the Joint Venture Formation Agreement, was only "substantially the form" of the Amended and Restated Operating Agreement if the Joint Venture was formed.  *JA 22.[4]*

---

[3]     The title of the draft Amended and Restated Operating Agreement of Cool Spring, LLC, mistakenly referred to Parcel Owners' LLC as Cool Spring, LLC whereas its actual name was Cool Spring Road, LLC.

[4]     If Parcel Owners were required to admit Metropolitan as a member of their LLC, and give it a 71% interest in it, under the draft Agreement Metropolitan would become the General Manager of the Joint Venture who could not be removed as the General Manager without giving its consent. *See JA 65, Section 5.1.4* of the proposed Amended and Restated Operating Agreement of Cool Spring, LLC.  Metropolitan would have control of the Parcel Owners' Property, *JA 63, Section 5.1.2,* including, as cited at page 7 of Metropolitan's Brief, the right to develop and implement a development plan.  *JA 63, Section 5.1.2.1.* A development plan is different from Land Use Approvals.

In its Brief, at page 7, Metropolitan claims that under the Amended and Restated Operating Agreement it would have "remain[ed] obligated post-closing to develop and implement a plan for the development of the land." Although a development plan is different from governmentally issued Land Use Approvals, Metropolitan includes this erroneous claim to support its argument that it was not required to obtain the Land Use Approvals within the Entitlement Period.

Metropolitan is mixing apples with oranges. Section 5.1.2 relates to the duties of the General Manager of the Joint Venture if the Joint Venture is formed. The section provides that the General Manager would be charged with "develop[ing] and implement[ing] a plan for the development of the Project, including developing a schedule for the construction of the Project, coordinating all development and construction matters relating thereto…." *JA 63, Section 5.1.2.1.*

The reference to a plan for the development of the project in the Amended and Restated Operating Agreement related to construction after, and if the Land Use Approvals were obtained and the Joint Venture was formed. It had nothing to do with the condition precedent that Metropolitan obtain the Land Use Approvals necessary to develop the Property in the agreed manner during the Entitlement Period, which was before the Joint Venture and would have been created and an amended and restated operating agreement would have become effective. The

16

Amended and Restated Operating Agreement has nothing to do with the closing requirement in Article 6.2(b).

Metropolitan's reliance upon a draft of the Amended and Restated Operating Agreement of Cool Spring, LLC to argue that it was not obligated to obtain the Land Use Approvals during the Entitlement Period is a red herring. The unexecuted Amended and Restated Operating Agreement would not have been executed, nor could the Property be developed in the agreed upon manner, without Metropolitan obtaining the Land Use Approvals.

### D.     THE DISTRICT COURT'S MEMORANDUM OPINION

In entering summary judgment in favor of the Parcel Owners, the District Court addressed the "dispositive issue" in this case, "whether obtaining the Land Use Approvals during the Entitlement Period was required, as a condition precedent, to closing under the [Joint Venture Formation] Agreement and [Metropolitan's] entitlement to the 71% interest in Cool Spring Road, LLC, the sole asset of which is the Property." *JA 944, Memorandum Opinion, p. 12.* The Court held that "the Agreement clearly and unambiguously required [Metropolitan] to pursue and obtain the Land Use Approvals during the Entitlement Period, which [Metropolitan] admits that it did not obtain." *JA 951, Memorandum Opinion p. 19.*

In reaching its decision, the District Court reviewed and analyzed the language of Article 3.3(a), to determine whether Metropolitan's argument that it was not

17

required to obtain the Land Use Approvals, but only had to make a commercially reasonable effort to pursue them, was in accord with the terms of the Joint Venture Formation Agreement. Metropolitan argued that the language in Article 3.3(a) which provided that it "use its commercially reasonable efforts to pursue and obtain the Land Use Approvals" did not require that it actually obtain the Approvals, but rather all it had to do was pursue the Land Use Approvals. The District Court emphatically rejected this argument. The Court stated that Metropolitan's "reading of this sentence in Article 3.3(a) is inconsistent with the character and purpose of the contract and the surrounding circumstances. *JA 945, Memorandum Opinion p. 13.*

In reaching its decision, the District Court found that "the language is clear and unambiguous and that 'pursue and obtain' [in Article 3.3(a)] is not subject to multiple interpretations." *JA 944, Memorandum Opinion p. 12.*

In reaching this conclusion, the Court rejected Metropolitan's claim that the word "and" in "pursue and obtain" did not require that Metropolitan both "pursue and obtain" but instead should be construed as only requiring it to pursue or obtain. The District Court in rejecting this interpretation of the meaning of the word "and" in "pursue and obtain" held "'[o]r' has a disjunctive meaning while 'and' has a conjunctive meaning." *JA 944-45, Memorandum Opinion p. 12-13.*

The District Court found that to interpret Article 3.3(a) in the manner promoted by Metropolitan would "render the 'and obtain' language superfluous." It

18

would impermissibly require the Court to "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *JA 946, Memorandum Opinion p. 14.*

In reaching its decision that the Joint Venture Formation Agreement required Metropolitan to obtain the Land Use Approvals within the Entitlement Period, the Court did not confine its analysis solely to the language in Article 3.3(a). The Court also considered the Agreement as a whole. The Court noted that Article 3.4 of the Agreement "makes clear that the purpose of the Entitlement Period…was to actually obtain the Land Use Approvals…." *JA 949, Memorandum Opinion p. 17,* as Article 3.4 only permitted the extension of the Entitlement Period if the Land Use Approvals were not obtained within two years. The Court also considered other sections of the Agreement which made it clear that Metropolitan was required to obtain the Land Use Approvals, including Article 2.3, 3.6(a), and 6.2.

The District Court also rejected Metropolitan's claim that it had met the conditions for closing in Article 6.2 of the Joint Venture Formation Agreement. The Court determined that obtaining the Land Use Approvals was an obligation which Metropolitan had to fulfill. The Court decided that Metropolitan had not complied with Article 6.2(b), which required that at closing all deliveries shall have been tendered, the primary one, being the Land Use Approvals, which Metropolitan could not deliver. The Court stated: "Plaintiff failed to satisfy Article 6.2(b), which

19

required Plaintiff to 'have performed its obligations hereunder.'" *JA 948-50, Memorandum Opinion p. 16-18.*

The District Court determined that "obtaining the Land Use Approvals was, indeed, a condition of closing." *JA 950, Memorandum Opinion p. 18.* "Here obtaining the Land Use Approvals was a key factor in the overall purpose of the Agreement which was to develop and construct the property into 120 'market rate, multi-family rental units.'" *JA 950, Memorandum Opinion p. 18.*

## SUMMARY OF ARGUMENT

Metropolitan, a commercial real estate developer, identified Parcel Owners' unique 17.3 acres of undeveloped land in Hyattsville, Maryland as a potential valuable property for development. Metropolitan contacted the Parcel Owners about the Property and proposed that they enter into a Joint Venture with Metropolitan to develop the Property as a multi-unit residential rental project. Metropolitan touted itself as an expert in the development of similar properties, represented that in the past it had successfully obtained Land Use Approvals in the area where the Property was located and represented that it could obtain the necessary Land Use Approvals for Parcel Owners' Property.[5]

---

[5]    Metropolitan admitted at page 19 of its Brief, that the Property's "highest value would come after rezoning."

20

The Parcel Owners agreed to form a Joint Venture with Metropolitan to develop the Property for multi-unit residential rental use but conditioned the creation of the Joint Venture upon Metropolitan being able to obtain the necessary Land Use Approvals within a specific, finite period of time. The Parties agreed that Metropolitan would be given two years, which was designated the "Entitlement Period," within which to obtain the Land Use Approvals, subject to up to a one-year extension if Metropolitan was diligently attempting but was not successful during the two-years.

The Parcel Owners and Metropolitan entered into a Joint Venture Formation Agreement to form the Joint Venture if the Land Use Approvals were obtained. As the District Court determined, following a full analysis of the terms of the Joint Venture Formation Agreement, the Agreement clearly and unambiguously required that Metropolitan had to obtain the Land Use Approvals within the Entitlement Period, as extended, as a condition precedent to the formation of the Joint Venture and to being entitled to be admitted to and receive a 71% interest in the Parcel Owners' LLC. *JA 951, Memorandum Opinion at p. 19.* As it turned out, Metropolitan was not able to satisfy the condition precedent. Nor was it able to satisfy Article 6.2(b) of the conditions to close.

Nonetheless, in an effort to re-write the Joint Venture Formation Agreement, Metropolitan filed suit against the Parcel Owners seeking, through specific

21

performance of their self-interested interpretation of the Agreement, to compel Parcel Owners to give Metropolitan a 71% interest in Parcel Owners' LLC, the sole asset of which is Parcel Owners' Property.   Metropolitan erroneously claims that the Joint Venture Formation Agreement did not require it to obtain the Land Use Approvals, but instead, all Metropolitan was required to do was make a commercially reasonable effort to pursue the Land Use Approvals.  Metropolitan asserts that its failure to obtain the Land Use Approvals is irrelevant.

The District Court, on summary judgment, correctly rejected Metropolitan's argument.  The language of Article 3.3(a) required Metropolitan to "pursue and obtain" the Land Use Approvals.  "Pursue and obtain" is a unified clause.  The words "pursue" and "obtain" are connected with the word "and" and not the word "or."

In the Joint Venture Formation Agreement, "pursue and obtain" were not separate requirements. Accepting Metropolitan's argument would make "pursue" sufficient to require Parcel Owners to enter into a Joint Venture with Metropolitan and give it a 71% interest in Parcel Owners' LLC notwithstanding that the Land Use Approvals were not successfully obtained and the Property could not be developed as agreed without them.  *JA 944-45, Memorandum Opinion at pp. 12-13.*

In reaching its decision, the District Court correctly rejected Metropolitan's argument that the presence of the words "use commercially reasonable efforts" preceding the words "pursue and obtain" in Article 3.3(a), which Metropolitan

22

describes as a series qualifier, did not result in "pursue" being independent from "obtain," so that either one was a separate condition precedent, only one of which had to be satisfied. The words "use commercially reasonable efforts" did not change the meaning of "pursue and obtain." Interpreting the Joint Venture Formation Agreement to change the meaning of the word "and" to "or" would impermissibly, under Maryland law, require the Court to "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used and to rewrite the parties contract." *JA 946, Memorandum Opinion at p. 14.* Such an interpretation would negate the common sense and traditionally understood meaning of the word "and," making it superfluous.

Moreover, the Joint Venture Formation Agreement as a whole reflects the Parties' intentions at the time they entered into it, that the condition precedent to the formation of the Joint Venture, and Metropolitan's admission to and 71% interest in it, was that Metropolitan obtain the Land Use Approvals within the agreed period of time, the Entitlement Period.

Metropolitan's argument that "Entitlement Period" was not the period of time within which it was required to obtain the Land Use Approvals, but instead simply established a date by which it had to make a go/no go decision whether it wanted to stay in the deal, should also be rejected. Metropolitan relies upon Article 3.3(b) to assert that the Entitlement Period provided it with up to three years to terminate the

23

Agreement. That is not what Article 3.3(b) provides. Article 3.3(b) gave Metropolitan the right to terminate, but only if the Land Use Approvals could not be obtained or the Approvals that were obtained contained onerous and unacceptable provisions.

Metropolitan misconstrues Article 6.2 of the Joint Venture Formation Agreement.  It ignores the language "in addition to in all other conditions set forth herein," in the first sentence of Article 6.2 which made satisfying the requirements in Article 3.3(a) of obtaining the Land Use Approvals a condition to close.  Instead, Metropolitan erroneously asserts that the only conditions to close are those in Article 6.2(a) to (d).

Even if Metropolitan was correct that the language in 6.2, "in addition to all other conditions set forth herein" is meaningless, which it is not, Article 6.2(b) specifically provided that Metropolitan was required by the closing date to "have performed its obligations hereunder and all deliveries to be made at Closing have been tendered." *JA 30, Article 6.2(b)*.  Obtaining the Land Use Approvals within the Entitlement Period was an obligation Metropolitan was required to complete before closing, and tendering delivery of the Approvals by the closing date was required.  Metropolitan did not satisfy Article 6.2(b).  It did not obtain and could not tender the Land Use Approvals, which were necessary to develop the Property in the

24

agreed manner.  It was not entitled to close, to the creation of the Joint Venture and a 71% interest in Parcel Owners' LLC.

Metropolitan's rights and interest in the Property were not forfeited as it claims at page 24 of its Brief.  It had no rights or interest in Parcel Owners' Property unless it successfully fulfilled the requirement that it obtain the Land Use Approvals necessary to develop the Property in the agreed manner.  When Metropolitan entered into the Joint Venture Formation Agreement it, like many real estate developers, essentially placed a bet that it could obtain the Land Use Approvals within the agreed time.  It lost the bet.  It is not entitled to now collect the proceeds of the bet, the creation of the Joint Venture with a 71% interest.  It did not satisfy the condition precedent of obtaining the Land Use Approvals.

Moreover, Metropolitan was not given an unlimited period of time to obtain the Land Use Approvals to be entitled to admission into Parcel Owners' LLC.  It was not given 5, 10, or 15 years to satisfy the requirement that it obtain the Land Use Approvals.  The requirement was that it obtain the Land Use Approvals within a finite period of time, the Entitlement Period, which it failed to do.

## **ARGUMENT**

**A.    The Joint Venture Formation Agreement Clearly And Unambiguously Required That Metropolitan Actually Obtain The Land Use Approvals Necessary To Develop The Property In The Agreed Upon Manner Within The Entitlement Period, Which There Is No Dispute, Metropolitan Failed To Do**

25

### 1.    Maryland Law of Contract Interpretation

Article 10.4 of the Joint Venture Formation Agreement provides that it shall be governed and enforced in accordance with Maryland law. *JA 37.*

"Under Maryland law, '[t]he interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law.'" *Gresham v. Lumbermen's Mut. Cas. Co.,* 404 F.3d 253, 260 (4th Cir. 2005) (quoting *Sy-Lene of Wash., Inc. v. Starwood Urban Retail, II, LLC,* 376 Md. 157, 163, 829 A.2d 540, 544 (2003)).

Generally, a contract is not deemed to be ambiguous "simply because, in litigation, the parties offer different meanings to the language," but rather, in staying consistent with the objective law of contract interpretation, for a contract to be determined to be ambiguous there must actually be more than one reasonable meaning. *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 400 Md. 718, 751, 929 A.2d 932, 951-52 (2007); *see Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358, 363 (1999). In determining whether a contract is ambiguous, Courts give consideration to "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Calomiris*, 353 Md. at 436, 727 A.2d at 363 (citations omitted).

Maryland follows the objective rule of contract interpretation, the cardinal rule of which is to "give effect to the parties' intentions." *Tomran, Inc. v. Passano*, 391 Md. 1, 14, 891 A.2d 336, 344 (2006); *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 497, 872 A.2d 969, 985 (2005); *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224, 232 (2013). In seeking to discern the parties' intentions, a "court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated." *Aronson & Co. v. Fetridge*, 181 Md. App. 650, 681, 957 A.2d 125, 144 (2008); *Dumbarton Imp. Ass'n. Inc.*, 434 Md. at 52, 73 A.3d at 232.

In doing so, courts "attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect." *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 396, 220 A.3d 303, 312 (2019); *see B & P Enterprises v. Overland Equipment Co.*, 133 Md. App. 583, 604, 758 A.2d 1026, 1037 (2000); *Ramlall v. MobilePro Corp.*, 202 Md.App. 20, 42-43, 30 A.3d 1003, 1016 (2011); *Walker v. Dept. of Human Resources,* 379 Md. 407, 421, 842 A.2d 53, 61 (2004). In interpreting the language of a contract, a "court must analyze the language of the contract based on the plain meaning of the words used," unless it is apparent that the parties ascribed a special or technical meaning to the words. *Post v. Bregman*, 112 Md. App. 738, 750, 686 A.2d 665, 670

(1996), *rev'd on other grounds*, 349 Md. 142, 707 A.2d 806 (1998); *Gresham,* 404 F.3d at 260; *Sy-Lene of Wash., Inc.,* 376 Md. at 167, 829 A.2d at 546.  In doing so, Courts "consistently 'strive to interpret contracts in accordance with common sense.'" *Credible Behavioral Health, Inc.*, 466 Md. at 397, 220 A.3d at 313 (quoting *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 348, 86 A.3d 665, 674 (2014)).

Under Maryland law, "courts do not interpret contracts in a manner that would render provisions superfluous or as having no effect." *Towson University v. Conte*, 384 Md. 68, 81, 862 A.2d 941, 948 (2004).  Moreover, under Maryland law, "it is improper for the Court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships." *Parkway 1046, LLC v. U.S. Home Corporation*, 961 F.3d 301, 307 (4th Cir.  2020).

### 2.    The Joint Venture Formation Agreement Required That Metropolitan Obtain The Land Use Approvals, Not Merely Pursue Them

Article 3.3(a) of the Joint Venture Formation Agreement clearly and unambiguously stated:

> (a) The parties agree that, from and after the Effective Date, Metropolitan shall have the right to **pursue and obtain** the Land Use Approvals and shall use its commercially reasonable efforts to **pursue and obtain** the Land Use Approvals. . . .

*JA 25* (Emphasis added).

28

The unified words "pursue and obtain" are not subject to multiple interpretations. The word "and" joins the word "pursue" with the word "obtain," making them a single unified requirement.

Contrary to how Metropolitan argues the word "and" should be treated in "pursue and obtain," the word "and" should not be treated as a meaningless word. Nor should it be given a different meaning than its ordinary use and meaning. Connecting "pursue" with "obtain" by the use of the word "and" establishes that at the time the Parties entered into the Joint Venture Formation Agreement, they intended that Metropolitan both "pursue and obtain" the Land Use Approvals.

"And" and "or" are both conjunctions used to link words, clauses and phrases, but in different ways. The word "and" means, together with, along with, in addition to. The word "or" has a disjunctive meaning, used to indicate an alternative. *SVF Riva Annapolis LLC v. Gilroy,* 459 Md. 632, 642, 187 A.3d 686, 692 (2018) (quoting *The American Heritage Dictionary of English Language* 1236 (4th ed. 2006) which states that "'and' is a conjunction meaning '[t]ogether with or along with; in addition to….") A reasonable person in the position of the Parties at the time the Joint Venture Formation Agreement was entered, reasonably would have known that what was intended by "pursue and obtain" was that the use of the word "and" in "pursue and obtain" meant that the words were joined together into a single requirement.

Metropolitan's argument, separating "pursue" from "obtain," making them independent requirements, only one of which needed to be accomplished, would require that the Court rewrite Article 3.3(a).  It would require changing "pursue and obtain" to either "pursue or obtain," "pursue to obtain," "pursue and attempt to obtain" or "pursue and try to obtain." Each of these interpretations of the clear and unambiguous language "purse and obtain" would change the meaning of Article 3.3(a).

Accepting Metropolitan's argument would also require the Court to treat the word "and" as superfluous.  It would apply a meaning to "and" which is different than is ordinarily associated with the word. *See Towson University, supra,* 384 Md. at 81, 862 A.2d at 948. It would result in the Court impermissibly drawing a new contract for the Parties.  *See Parkway 1046, LLC, supra,* 961 F.3d at 307.

Common sense requires that the "and" in "pursue and obtain," dictates that "pursue" and "obtain" be treated as inseparable and not two different requirements, only one of which had to be accomplished.  The purpose of the Joint Venture Formation Agreement was to form a Joint Venture to develop Parcel Owners' undeveloped Property into a minimum of 120 multi-unit market rate residential rental units which could not be done without obtaining the Land Use Approvals.

Metropolitan also ignores the totality of the Joint Venture Formation Agreement.  Metropolitan ignores that the word "obtain" appears in Article 2.3,

30

which authorized Metropolitan to place a cloud upon the Property's title, which had to be removed if the Land Use Approvals were not obtained.[6]

It ignores that Article 3.4 provides "[i]f Metropolitan is not successful in **obtaining** the Land Use Approvals during the Entitlement Period. . . ." (Emphasis Added.)  If Metropolitan's theory that it did not have to "obtain" is correct, Article 3.4 would have read "Metropolitan is entitled to two six-month extensions if it needs additional time to pursue the Land Use Approvals.  Article 3.4 specifically used the word obtain because that was the condition precedent Metropolitan had to satisfy.  Article 3.4 gave Metropolitan an additional finite period of time, up to a year, to obtain the Approvals.

Article 3.6 gave the individual Parcel Owners a Put Option "if Metropolitan successfully **obtains** Land Use Approvals during the Entitlement Period."  Each Parcel Owner could demand that their interest in Parcel Owners' LLC be bought out after the Land Use Approvals were obtained and the Joint Venture was formed.  *JA 27.* (emphasis added).  There is no similar put option if the Land Use Approvals are not obtained.  Metropolitan could not require that its interest in the Joint Venture be

---

[6]    After Metropolitan filed its Complaint in this case, it filed a *lis pendens* in the land records to place a cloud on the Property's title. The District Court, in its Memorandum Opinion and its Order directed Metropolitan to remove the *lis pendens*.  *JA 954, Memorandum Opinion at p. 22; JA 957, District Court Order at p. 2.*  Metropolitan has failed to do so, citing as its reason its appeal of the District Court's decision.

31

purchased because if it did not obtain the Land Use Approvals it would have no interest to "put." No Joint Venture would have been formed, nor come into existence.

Article 3.3(b), which is discussed more fully below, again refers to Land Use Approvals being obtained.

No amount of linguistic gymnastics by Metropolitan yields a different meaning to Article 3.3(a) than the common sense, clear and unambiguous condition precedent, as the District Court found, that Metropolitan had to obtain the Land Use Approvals necessary to develop the Property. *JA 951, Memorandum Opinion at p. 19.* No matter how desperately Metropolitan wants the word "and" to be treated as if it was the word "or," the word "and" is not the word "or." "[P]ursue and obtain" are not separate, alternative requirements. It would not be an objectively correct, common sense reading of Article 3.3(a) to treat "and" as "or," or in interpreting "pursue and obtain," to replace "and" with "or."[7]

---

[7]    Metropolitan's argument reminds one of the statement by Humpty Dumpty in Lewis Carroll's *Through the Looking Glass*:

> "When I use a word," Humpty Dumpty said in rather a scornful tone,
> "it means just what I choose it to mean – neither more, nor less."
>
> "The question is" said Humpty Dumpty, "which is to be the master
> – that's all."

In the instant case, no matter how much Metropolitan wants to be the master of the meaning of the word "and," and how it should be construed in "pursue and obtain," "and" does not mean "or," just like "up" does not mean "down," and "in"

32

**B.      The Series Qualifier Canon Does Not Separate "Pursue" From "Obtain" In Article 3.3(a)**

In Metropolitan's desperate attempt to separate "pursue" from "obtain," claiming that all it had to do was make a commercially reasonable effort to pursue, Metropolitan hangs it hat on a misapplication of the Supreme Court decision in *Facebook, Inc. v. Duguid,* ____ U.S. ____, 141 S. Ct. 1163 (2021). This argument was rejected by the District Court. *JA 946, Memorandum Opinion at p. 14*.

Metropolitan asserts the words "shall use its commercially reasonable efforts" is a series qualifier and that the presence of those words in Article 3.3(a), preceding the words "pursue and obtain," separated "pursue" from "obtain." Here again Metropolitan ignores that the Property could not be developed in the manner for which the Parties agreed to form the Joint Venture unless the Land Use Approvals were obtained.

*Facebook* is inapposite to the instant case. *Facebook,* was a statutory construction case in which the verbs "store" and "produce" were separated by the word "or," and not, as in the instant case, by "and." The Court acknowledged that a modifier associated with a list of words, "normally applies to the entire series." *Id.*

---

does not mean "out," etc. In trying to prevent itself from falling off Humpty Dumpty's wall, Metropolitan's manipulation of the language in Article 3.3(a) must be rejected. The master here is the plain language of Article 3.3(a), not Metropolitan's tortured interpretation of it.

at 1169.  The Court, however, did not hold that the presence of a series qualifier requires that verbs connected by the word "and" be treated as separate from each other.  To do so would negate the common sense and ordinary significance of words connecting verbs, such as the word "and" in "pursue and obtain."

The context of how the words are used in the text controls.  When, as here, the verbs are connected in a unified cohesive clause, the series qualifier should be applied in accordance with the intent of the Parties and shall be construed as modifying the clause as a whole, rather than dividing it into separate parts.

The Court did not decide that in all circumstances when a series qualifier is present, verbs subject to the qualifier must be considered as standing independently from each other.  Rather, the Supreme Court decided that when a "modifier . . . immediately follows a concise integrated clause," and "the clause hangs together as a unified whole," the modifier modifies the whole integrated unified clause, which is precisely the case here.  *Id.* at 1169.  The integrated unified clause being "pursue and obtain."

Metropolitan was required to use commercially reasonable efforts to "pursue and obtain" the Land Use Approvals.  It could not just sit back and tie the Property up during the Entitlement Period, waiting for something to happen which it could take advantage of.

34

Metropolitan's statement at page 20 of its Brief, that "the plain language [of Article 3.3(a)] imposes an obligation only for Metropolitan to exercise an agreed level of effort – not to achieve a particular result" was correctly rejected by the District Court, *JA 946, Memorandum Opinion at p. 14*.  It should similarly be rejected here. Effort would not enable the Property to be developed as agreed. Establishing and funding a reasonable budget to pursue the Approvals would not enable the Property to be developed in the agreed manner without the Land Use Approvals. No matter the budget, the amount of reasonable funding,  an unsuccessful effort to pursue, without obtaining the Land Use Approvals would not result in satisfying the purpose for forming the Joint Venture. The Land Use Approvals had to be obtained.

The Parcel Owners were willing to give Metropolitan up to three years to obtain the Land Use Approvals, but at the end of the day, if the Approvals were not obtained, the Property could not be developed in the agreed upon manner and Metropolitan would not be entitled to admission into the Joint Venture, the Parcel Owners' LLC and a controlling membership interest.

The District Court correctly rejected Metropolitan's series qualifier argument, stating:

> Plaintiff's argument, that the series-qualifier canon, as discussed in the recent Supreme Court case *Facebook, Inc. v. Duguid,* 141 S.Ct. 1163 (2021), defeats Defendants' plain reading of Article

> 3.3(a) is unconvincing…The issue here is not whether "use commercially reasonable efforts" modifies the word "obtain." The question is whether those efforts must result in both the pursuit and the obtaining. And the use of the conjunction "and" convinces the Court that it does.

*JA 946, Memorandum Opinion at pp. 14-15.*[8]

No matter how desperately Metropolitan wants this Court to ignore the word "and," treating it as the word "or," the District Court correctly held that the "pursue and obtain" language in Article 3.3(a), and the clear intent of the Parties, manifested by the Joint Venture Agreement as a whole, the Agreement "is not ambiguous as to whether [Metropolitan] had to obtain the Land Use Approvals." *JA 947, Memorandum Opinion at p. 15.* It is not susceptible to multiple interpretations.

### C. Obtaining the Land Use Approvals Was A Condition Precedent To Close

---

[8] Justice Alito, in his concurring opinion in *Facebook,* citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (2012), p. 51, stated that "interpretive canons 'are not rules' of interpretation in any strict sense but presumptions about what an intelligently produced text conveys." Citing Scalia and Garner at p. 150, Justice Alito wrote "Perhaps more than most of the other canons, [the series-qualifier canon] is highly sensitive to context. Often the sense of the matter prevails. . . ." 141 S. Ct. at 1174.

Justice Alito observed that in interpreting language, notwithstanding the canon, "No one familiar with the English language would fail to understand it – even though its meaning is contrary to the one suggested by the series qualifier canon." *Id.*

36

A condition precedent in a contract is "a fact other than mere lapse of time, which, unless executed, must exist or occur before a duty of immediate performance of a promise arises." *Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555, 557 (1973); *Chevron U.S.A., Inc. v. Apex Oil Co., Inc.,* 113 F.Supp.3d 807, 821 (D. Md. 2015). In the instant case, before Parcel Owners had a duty to form a Joint Venture with Metropolitan and give Metropolitan a 71% interest in the Parcel Owners' LLC, Metropolitan had to obtain the Land Use Approvals.

Under Maryland Law, "[n]o particular form of words is necessary in order to create an express condition" and "whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed.…" *Chirichella,* 270 Md. at 182, 310 A.2d at 557. To make the determination of whether a condition precedent is present in an agreement, the language of the contract must be examined. *See Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 165 Md. App. 262, 273, 885 A.2d 381, 387-88 (2005).

Metropolitan's claim that it was not subject to a condition precedent is predicated upon its erroneous assertion that the Joint Venture Formation Agreement did not require Metropolitan to obtain the Land Use Approvals. Instead, Metropolitan hangs it hat on the claim that Article 3.3(a) only required it to use commercially reasonable efforts to pursue, which it claims it did. Metropolitan

asserts that by making commercially reasonable efforts to pursue, it satisfied the condition precedent.

Relying upon, *Howard v. Federal Crop Ins. Corp.*, 540 F.2d 695 (4th Cir. 1976), Metropolitan asserts that this Court has characterized a preference against finding a condition precedent in contracts.  But, Metropolitan ignores that courts enforce conditions precedent. Courts should not ignore a condition precedent when it is plainly and unambiguously provided in the contract or is present by necessary implication.  *Hubler Rentals, Inc. v. Roadway Exp., Inc.*, 637 F.2d 257, 263 n.2 (4th Cir. 1981); *see J.E. Dunn Const. Co. v. S.R.P. Development Ltd. Partnership*, 115 F. Supp. 3d 593, 607 (D. Md. 2015). [9]

---

[9]     Before the District Court, and likely in its Reply Brief, Metropolitan also relied upon the Restatement (Second) Contracts § 227 cmt. b to argue that there is a judicial disinclination to find a condition precedent in a contract.  In making this argument, however, Metropolitan ignored that courts enforce conditions precedent, particularly when the condition precedent "is within the obligee's control or the circumstances indicate that he has assumed the risk."  Restatement (Second) Contracts § 227, states:

> In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk.

In the instant case, there can be no doubt that obtaining the Land Use Approvals was within Metropolitan's control and that it assumed the risk associated with obtaining them.  Obtaining Land Use Approvals was the consideration to the formation of and Metropolitan's admission to the Joint Venture, Parcel Owners'

Metropolitan ignores that it was the Party who contacted the Parcel Owners and proposed to develop Parcel Owners' Property for multi-unit residential rental purposes, which could only be done if the Land Use Approvals were obtained. Parcel Owners agreed to form a Joint Venture with Metropolitan to develop the Property if the necessary Land Use Approvals could be obtained. Obtaining the Land Use Approvals was Metropolitan's admission ticket to the Joint Venture. It was Metropolitan's obligation to obtain them. It was the condition precedent to the formation of the Joint Venture.

Where a contractual duty is subject to a condition precedent, there is no duty of performance by the other side until the condition precedent has occurred or been performed. *Chirichella*, 270 Md. at 182, 310 A.2d at 557 (quoting *Griffith v. Scheungrab*, 219 Md. 27, 34-35, 146 A.2d 864, 868 (1958)). "Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable

---

LLC. In addition, when Metropolitan entered into the Joint Venture Formation Agreement, it assumed the risk that it might not be able to obtain the Approvals. It believes that because of its expertise, it could obtain the Land Use Approvals, but it was wrong. *See B & P Enterprises,* 133 Md. App. at 608.

Like many real estate developers, Metropolitan assume the risk that it could obtain the necessary zoning to develop the Property. It did not. Unsuccessfully trying, however, does not give it a right to compel Parcel Owners to for a Joint Venture with it.

construction of the language used [ ] in light of all the surrounding circumstances when they executed the contract." 13 Williston on Contracts § 38:1; *see Chirichella*, 270 Md. at 182, 310 A.2d at 557.  In the instant case, Parcel Owners owed no duty to Metropolitan unless Metropolitan obtained the necessary Land Use Approvals within the Entitlement Period.

### D.    The Land Use Approvals Had To Be Obtained Within The Entitlement Period

From the beginning of the Parties' relationship, it was agreed that Metropolitan would be given a finite period of time in which to obtain the Land Use Approvals, designated by the Parties as the Entitlement Period.  The first iteration of the Joint Venture Formation Agreement, which Metropolitan's counsel drafted and sent to Parcel Owners' counsel, included the definition of Entitlement Period and multiple references to it, signifying that it was the period of time within which Metropolitan had to obtain the necessary Land Use Approvals.  Entitlement Period remained in the Joint Venture Formation Agreement through the various iterations and was in the final Agreement that was executed in August 2017.

The term "Entitlement Period," in of itself, denotes a time requirement. "Entitlement" is "the state or condition of being entitled; a right to benefits specified especially by law or contract." Merriam-Webster.com, https://www.Merriam-Webster.com/dictionary/entitlement.  Here the term "Entitlement" was coupled with

the word "Period" because Metropolitan was required to obtain the Land Use Approvals in a specified, finite period of time in order to be entitled to the benefits under the Joint Venture Formation Agreement, the formation of the Joint Venture, Parcel Owners' LLC, in which Metropolitan would be admitted with a 71% interest.

The term Entitlement Period is defined in Article 3.2(a):

> "Entitlement Period" means the period commencing on the expiration of the Study Period and expiring on the two (2) year anniversary thereof, as the same may be extended pursuant to the express terms of this Agreement.

*JA 25.*

Importantly, Article 3.4 of the Joint Venture Formation Agreement provides:

> 3.4 Extension of Entitlement Period. If Metropolitan is not successful **in obtaining the Land Use Approvals during the Entitlement Period**, but Metropolitan has applied for and is diligently pursuing the Land Use Approvals, then Metropolitan shall have two (2) options to extend the Entitlement Period for periods of six (6) months each . . . .

*JA 26, Article 3.4.* (emphasis added).

There was no dispute below, Metropolitan took the full three years of the extended Entitlement Period, although it did not obtain the Land Use Approvals by the end of the Entitlement Period, November 15, 2020. This was notwithstanding that Article 10.8 of the Joint Venture Formation Agreement provided that "[t]ime is of the essence in the performance of this Agreement. *JA 37, Article 10.8.*

41

A number of provisions in the Joint Venture Formation Agreement, in addition to Articles 3.2(a) and 3.4, specifically refer to the requirement of obtaining the Land Use Approvals within the Entitlement Period. *See JA 24-25, Article 2.3* ("if Metropolitan fails to obtain the Approvals during the Entitlement Period"); *JA 26, Article 3.3(b)* ("If (a) applicable Government Authorities do not issue Land Use Approvals prior to the expiration of the Entitlement Period"); *JA 26-27, Article 3.4* (Extension of Entitlement Period "[i]f Metropolitan is not successful in obtaining the Land Use Approvals during the Entitlement Period"); *JA 27, Article 3.6* (Exercise of a Put Option "if Metropolitan successfully obtains Land Use Approvals during the Entitlement Period").[10]

Not only did Metropolitan receive the two six-month extensions under Article 3.4, Metropolitan even requested that the Joint Venture Formation Agreement be amended to extend the Entitlement Period by 18 months. *JA 329, 329-333, January*

---

[10] Article 3.6(a) of the Joint Venture Formation Agreement provided for a Put Option "**if Metropolitan successfully obtains Land Use Approvals during the Entitlement Period (including any extensions thereof) . . . .**" (emphasis added) under which any Parcel Owner who did "not wish to continue with the construction of the Project" could require that their interest be purchased by Metropolitan or one of the other Parcel Owners who decided to remain in the Joint Venture. *JA 27.*

There is no similar put option if the Land Use Approvals are not obtained by Metropolitan within the Entitlement Period. Metropolitan could not require that its interest in the Joint Venture be purchased because if it did not obtain the Land Use Approvals within the Entitlement Period it would have no interest to "put" as there would be no Joint Venture formed.

42

*21, 2020 Letter.* That request was denied. *JA 422, Lederberg Affidavit ¶15; Proposed Second Amendment to Joint Venture Formation Agreement.*

Metropolitan claims at pages 5, 8 and 9 of its Brief that the Entitlement Period was not the time period during which it had to obtain the Land Use Approvals, rather as it claims at page 9 of it is Brief, the Entitlement Period merely established a date by which Metropolitan had to make a "go/no go decision about the deal." Metropolitan claims that if it decided to go, even if the Land Use Approvals had not or could not be obtained, it had the right to compel the Parcel Owners to close, to form a Joint Venture with Metropolitan in which it would be given a 71% interest in Parcel Owners' LLC. Without regard to whether Metropolitan might ever be able to obtain the Land Use Approvals necessary to develop the Property in the agreed manner, or that the process might take 5 years, 10 years, 2 years, or more, the Parcel Owners would have no choice.

There is nothing in the Joint Venture Formation Agreement which supports Metropolitan's argument that Entitlement Period merely established when Metropolitan had to make a "go/no go decision" and that if it decided to remain in the project without obtaining the Land Use Approvals the Joint Venture would nonetheless be formed. Metropolitan does not cite a single provision of the Joint Venture Formation Agreement that expressly, or impliedly ties the Entitlement Period to anything other than obtaining Land use Approvals.

The only provision Metropolitan cites to support its claim that it could withdraw from the deal if it determines that the project is a "lost cause" is Article 3.3(b), which again references obtaining the Land Use Approvals within the Entitlement period. Although Article 3.3(b) gave Metropolitan the right to withdraw for specified reasons, Metropolitan's reliance upon Article 3.3(b) to support an argument that it was not required to obtain the Land Use Approvals within the Entitlement Period, is misplaced.

Article 3.3(b) required Parcel Owners to cooperate with Metropolitan to obtain Land Use Approvals. There was no allegation in this case that they did not.

Article 3.3(b) did not, however, give Metropolitan more than three years in which to obtain the Land Use Approvals. Nor does it support Metropolitan's claim that it was not required to obtain the Land Use Approvals, but only pursue them, using commercially reasonable efforts in order to be entitled to admission and a controlling interest in Parcel Owners' LLC.

Article 3.3(b) merely relieved Metropolitan from liability to Parcel Owners if (a) the Land Use Approvals were not issued "prior to the expiration of the Entitlement Period," (b) if Metropolitan determined it was unlikely that Land Use Approvals would be issued "prior to the expiration of the Entitlement Period," (c) if Metropolitan decided that the Approvals could not be obtained in a cost effective or **timely** manner, or (d) that the Governmental authorities imposed unacceptable

44

conditions upon the development of the Property. (Emphasis added). Subsections (a), (b) and (c), similar to other sections in the Joint Venture Formation Agreement, related to obtaining the Land Use Approvals within the Entitlement Period.

While Article 3.3(b) did not affirmatively give Metropolitan rights, other than the right to withdraw for the reasons stated in subsections (a) to (d), it did, however, provide that if Metropolitan withdrew and Parcel Owners were not in default under the Joint Venture Formation Agreement, Metropolitan was required to make an assignment to Parcel Owners of all of Metropolitan's right, title and interest in and to any pending, but unissued Land Use Applications. There is nothing in Article 3.3(b) providing for an extension of the Entitlement Period for Metropolitan to obtain Land Use Approvals.

### E. Metropolitan Did Not Satisfy The Conditions to Close

A close reading of Metropolitan's Brief reveals that it may be making two different alternative arguments regarding its obligation to obtain the Land Use Approvals. It first claims that under Article 3.3(a) obtaining the Land Use Approvals was not a connection precedent that it had to satisfy, but that instead the condition precedent was that it use commercially reasonable efforts to pursue the Land Use Approvals with no requirement that they be obtained. If that is the condition precedent, which it is not, Metropolitan asserts it satisfied it.

45

It appears that in its Brief, Metropolitan is separately arguing that it satisfied the conditions to close in Article 6.2 (a) to (d). It may be arguing that the conditions in Article 6.2 (a) to (d) are separate from the condition precedent to obtain.

In either case, the District Court correctly ruled against Metropolitan.

The condition precedent was obtaining the Land Use Approvals within the Entitlement Period, and not simply employing commercially reasonable efforts to pursue them.  The District Court determined that Metropolitan incorrectly identified the condition precedent, as using commercially reasonable efforts to pursue. However, that was not the condition precedent. It was to obtain the Land Use Approvals within the Entitlement Period.

Metropolitan did not meet the conditions to close in Article 6.2.  Article 6.2 is entitled "Conditions to the Parties' Obligations to Close."  *JA 30-31*.  The first paragraph of Article 6.2 expressly stated:

> Conditions to the Parties' Obligations to Close**.  In addition to all other conditions set forth herein,** the obligation of the Parcel Owners' LLC to consummate the transaction contemplated hereunder shall be contingent upon the satisfaction of the conditions set forth in sub-paragraphs (a) through (d) . . . .

*JA 30.* (emphasis added).

 In its Brief, Metropolitan ignores the express language "[i]n addition to all other conditions set forth herein," erroneously treating that language as surplusage, as if it means nothing and did not exist.  Metropolitan treats this express language as

46

having no meaning because it refuses to acknowledge that Article 3.3(a), and the other provisions of the Joint Formation Venture Agreement, clearly and unambiguously established that obtaining the Land Use Approvals within the Entitlement Period was an "all other condition[] set forth herein."

Metropolitan focuses its attention upon Article 6.2 (a)-(d), asserting that they state the only conditions which it was required to satisfy in order to compel Parcel Owners to close and enter into a Joint Venture admitting Metropolitan into Parcel Owners' LLC, with a 71% interest. Metropolitan claims it met each of the conditions to close in Article 6.2(a), (b), (c) and (d). That claim is incorrect, because, as the District Court correctly decided, Metropolitan failed to satisfy the condition to close in Article 6.2(b).

Article 6.2(b) states:

> As of the Closing Date, the other party shall have performed its obligations hereunder and all deliveries to be made at Closing have been tendered.

*JA 30.*

Metropolitan failed to perform its obligations. It was obligated to, but failed to obtain the Land Use Approvals.

Moreover, the primary deliverable which Metropolitan was required to tender to close was the Land Use Approvals, which it failed to obtain. The Land Use Approvals could not be tendered, they did not exist.

47

### F.     Metropolitan Is Not A Victim.  It Is A Contracting Party Who Simply Failed To Perform The Condition Precedent And Satisfy The Conditions In The Contract

Metropolitan's portrayal of itself as a victim is baseless.  Metropolitan is a sophisticated real estate developer.  It has no basis to cry foul because it was unable to satisfy the condition precedent.  It induced the Parcel Owners to do business with it upon the representation that it could obtain the necessary Land Use Approvals. They relied upon that representation.

Metropolitan has no right to demand that it should receive the benefits it would have been entitled to had it obtained the Land Use Approvals.  Metropolitan's crocodile tears aside, it entered into the deal with its eyes wide open anticipating that it could perform.  It did not satisfy the condition precedent, it is not entitled to be treated as if it did.

Although Metropolitan may now feel that it bit off more than it could chew when it agreed to the condition precedent of obtaining the Land Use Approvals within the Entitlement Period, it is not entitled to its self-serving interpretation of the Joint Venture Formation Agreement – that it was not required to obtain, but only to pursue the Land Use Approvals. Obtaining was the requirement.

## CONCLUSION

The District Court's entry of summary judgment in favor of the Appellees should be affirmed.

## REQUEST FOR ORAL ARGUMENT

Parcel Owners respectfully request oral argument under Federal Rule of Appellate Procedure 34(a), and Local Rule 34(a).  Parcel Owners believe that oral argument may assist the Court's consideration of this appeal and its analysis of the Joint Venture Formation Agreement and will provide an opportunity to have any questions the Court may have answered.

Respectfully submitted,

*/s/ Steven A. Allen*
Steven A. Allen
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, MD 21204
410-339-6769
410-832-5601 (facsimile)
sallen@pklaw.com
***Counsel for Defendants – Appellees***

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __22-1403__     **Caption:** Metro Dev. Group v. Cool Spring Road, LLC , et al.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ___11486___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word [*identify word processing program*] in Times New Roman, 14 Point Font [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Steven A. Allen

Party Name Appellees

Dated: July 14, 2022

**<u>CERTIFICATE OF SERVICE AND FILING</u>**

I hereby certify that on this 14th day of July, 2022, this Brief of Appellees was filed electronically with the Clerk of the Court using the CM/ECF System, and notice was sent of such following to the following registered CM/ECF users:

Ashley J.F. Lynn, Esquire
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
ajlynn@venable.com

Nicholas M. DePalma, Esquire
Henry F. Brandenstein, Jr., Esquire
Caleb E. McCallum, Esquire
Venable LLP
8010 Towers Crescent Dr., Suite 300
Tysons, Virginia 22182
nmdepalma@venable.com
hfbrandenstein@venable.com
cemccallum@venable.com

*Counsel for Plaintiff – Appellant,*
*Metropolitan Development Group at Cool Spring, LLC*

Respectfully submitted,

*/s/ Steven A. Allen*
Steven A. Allen
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, MD 21204
410-339-6769
410-832-5601 (facsimile)
sallen@pklaw.com
***Counsel for Defendants – Appellees***